## Case No. 4,803.

### FIRST NAT. BANK OF MANHATTAN v. KING WROUGHT IRON BRIDGE CO. et al.

[2 Cent. Law J. 505.][1]

District Court, Kansas. 1875.

Alfred Ennis and C. M. Foster, in support of motion.

A. L. Williams and Ross Burns, contra.

MORTON, J. The First National Bank of Manhattan, in the state of Kansas, commenced its action against the King Wrought Iron Bridge Co., a corporation organized under the laws of the state of Kansas, and Zenas King, Chas. N. Rix, Geo. F. Parmelee, Stephen French, and Alfred Ennis. King is a resident and citizen of Ohio. The other defendants are residents and citizens of Kansas. The petition alleges that the King Wrought Iron Bridge Co. executed a mortgage (upon real and personal property), to defendants, King, Rix, Parmelee, French and Ennis, to secure to them respectively, different amounts owing by the company to each—as evidenced by separate notes of the company, executed to each—that the note owned by defendant French amounting with interest to over $6,-

[1] [Reprinted by permission.]

000, has been duly assigned to plaintiff and is due, and the action is brought to obtain a judgment against the company upon this note, and to subject the mortgaged property to its payment. The petition alleges that the defendants King, Rix, Parmelee and Ennis refused to join in the action and they are therefore made defendants. The only necessity for bringing them into court is found in the fact that they, too, have an interest as mortgagees in the property mortgaged. They have no interest, and claim none, in resisting the personal judgment against the company, sought by the plaintiff. It is none of their business whether the plaintiff recovers such personal judgment or not. They need not take such personal judgment on their respective claims against the company unless they wish. In fact they need not take judgment at all against the company—even for their pro rata interest in the mortgaged property, unless they choose to formally demand it. But they have such rights under the mortgage, in that property, by way of lien, that they are necessary parties. They occupy the same position precisely as if they were prior or subsequent mortgagees. The plaintiff must bring them into court, and give them an opportunity to set up their respective claims. But when they do this, they are entitled to no affirmative relief, if the plaintiff fails to establish its lien on the property. In the latter case, they simply step out of court, with all their rights against the company unimpaired and unaffected. When A. brings his action against B. to foreclose a mortgage, and makes C. a party, as another mortgagee—if A. fails in his action, or dismisses his suit, C. can not obtain a judgment on his mortgage, against B. So much for the facts as alleged in the petition.

The defendants Rix, Parmelee and Ennis answer that they had transferred their interest in the mortgage, and their respective claims secured thereby, to the defendant, King, before the commencement of this action, and disclaim all interest. For the purposes of this opinion, the answer of the bridge company may be stated to set up payment as a defense. The defendant French makes default. The defendant Zenas King answers, alleging that subsequent to the mortgage he purchased the mortgaged property of the bridge company (and this is admitted by the plaintiff). He further alleges the assignment to him, by Rix, Parmelee and Ennis respectively, of all their interest in the subject-matter of the action. He alleges that the sale of the property to him by the bridge company was with the consent of the plaintiff and its assignor, French, and denies that plaintiff is the owner of the note sued on. Practically, then, the parties to the action are these: The bank as plaintiff, and the bridge company and Zenas King as defendants. The bank seeking to obtain a judgment against the bridge company on its claim, and to subject the mortgaged property to the payment of that judgment. The bridge company resisting that claim. The defendant King, by his own showing, having merged his mortgage in the legal title, by purchase, but resisting the claim of the bank to any lien upon the property. It seems to me that he has thus placed himself in the position of the purchaser of land subsequent to a mortgage upon it, and that he is only authorized to resist and deny the liability of the land to the debt. On the 29th of April the defendant King files with the clerk of this court his petition, setting forth the substance of the pleadings, alleging the residence of the parties as stated above, and praying that the cause be removed to the circuit court of the United States, for the district of Kansas. At the same time he files his bond with sureties for such removal. The application is made under the act of March 3, 1875. The sureties in the bond justify in the usual affidavit. The petition is not verified by affidavit. Neither the judge nor clerk of this court is applied to, to approve or accept the bond or the sufficiency of the sureties. This court is in regular session at the time (but had taken a recess of three or four days), but its attention is not called to the petition. All that is done in that matter is simply the filing of the papers with the clerk. And it is claimed that this, ipso facto, removes the cause to the United States circuit court. It may be added that no transcript has yet been filed in the federal court, and indeed none has been yet obtained from the clerk of this court. On the first day of May, upon affidavit made that some of the defendants were removing the personal property included in the mortgage, from the state of Kansas, the sheriff was, by the judge of this court at chambers, appointed receiver thereof and took possession. It may be stated, though not material, that the judge and the attorneys for the plaintiff were not, at the time, aware of the filing of the petition and bond for the removal of the cause, stated above.

The defendant King now moves the court to vacate the order appointing a receiver, and assigns the following reasons: 1st. That the affidavit is insufficient. 2d. That the order was made without notice, and that there was not such an emergency shown as authorized such appointment without notice. 3d. That the filing of the petition and bond above referred to, removed the cause to the United States circuit court, and that therefore this court had no jurisdiction to make such appointment.

As to the first two reasons assigned, I will only say that the affidavit seems to be amply sufficient and to show a pressing necessity for immediate and prompt action. It alleges that the defendant King was already engaged in removing the personal property mortgaged, out of the jurisdiction of the court. This is also openly avowed by his

attorneys upon the hearing of this motion. It is true that he claims that the chattel mortgage has become void as against his rights as a subsequent purchaser, by certain alleged laches on the part of the plaintiff. But this is denied by plaintiff and constitutes part of the issues to be tried and decided upon the trial of the action—and not to be adjudicated upon the hearing of a motion at chambers or in an interlocutory proceeding. The order can not be vacated for the two causes first assigned. The other reason assigned seems to present more difficulty and calls for an examination and construction of the recent act of congress of March 3, 1875. The second section of said act states when a case can be removed to the federal court. The amount in dispute exclusive of costs, must be $500. A certain class of cases are described, which may be removed, no matter where the residence of the parties may be. It is then provided that any suit of a civil nature at law or in equity, in which certain conditions of residence of the parties exist, and in which they bear certain relations to the actual controversy, may be removed. As to these cases, the first clause of the section provides that the suit must be one in which there shall be a controversy "between citizens of different states." This clause refers to a removal by either party; that is by the whole of what constitutes the one side or the other. The second clause states when a case can be removed by either party less than the whole. There must be in a suit in the state court, "a controversy which is wholly between citizens of different states, and which can be fully determined as between them." If so, then either one or more of the plaintiffs or defendants actually interested in the controversy may remove said suit into the circuit court of the United States. It is perfectly plain that it is under this second clause of the section that the defendant King claims the right of removal. The mode of removal is thus prescribed: The party desiring to remove the suit shall file a petition in the state court, and with it a bond with good and sufficient surety for entering a copy of the record in the federal court, by its next session, and paying all costs awarded if the removal is improperly made. It is then provided that "it shall be the duty of the state court to accept said petition and bond, and proceed no farther in such suit, and the said copy being entered as aforesaid in the said circuit court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in the said circuit court."

The cases subject to removal, and the mode in which the removal is to be effected being thus stated, two questions arise, which will be stated here in an order different from that which would naturally occur.

First. If the case is one which is properly removable, have the proper steps been taken by the defendant King to remove it, and at the date of the appointment of the sheriff as receiver, could it be considered as removed? In other words if removable, did this court, at that date, have any jurisdiction to act in the matter? If this court had, between the time when the petition and bond for the removal were filed in the office of the clerk of this court, and the time when the record might be filed in the federal court, no power to proceed with the trial of the issues made in the case, had it or had it not, the power to act during that time, in the preservation of the property, in a case over which it had once acquired unquestionable jurisdiction? And it will be remembered that the act seems to specify the time at which the record is filed in the federal court, as the date at which that court shall proceed with the case.

Second. Is the case one which could be removed? It is believed that but one decision has been rendered in any court of the United States, since the passage of this act, which has given to it a construction—that is by Judge Drummond in the United States district court for the northern district of Illinois. It may seem rash to criticise the opinion of a judge of such recognized learning and ability. One who for twenty-seven years has occupied so prominent a position in the district and circuit courts of the United States. But it seems as though in the event of his opinion being sustained, it would be the imperative duty of congress to make haste to repeal, or at least to materially amend, the statute. The results of the construction given to it by him, could not have been foreseen. In the case of Osgood v. Chicago, D. & V. R. Co. [Case No. 10,604]. Judge Drummond decides that in effecting the removal of cases under that act, the petition need not be sworn to; that the security need not be approved by the judge of the state court, that that court need not take any action on the petition or the bond, and in substance need not know anything at all about those two important papers (the petition and bond) which have the magical effect—though the one be utterly false in fact, and the other totally worthless in a pecuniary point of view—of ousting one court of its acquired jurisdiction without its knowledge, and vesting it in another which has as yet no information of the fact. I do not care to comment upon this further than to say that if this theory of the law is sustained, a new mode for distressed debtors to obtain continuances "over the term" commonly called "staving off cases," is presented to the profession, if they happen to have no scruples as to the professional propriety of adopting it. The filing of a petition alleging a substantial party in a case to be a resident of another state, though intimately known to the judge as his next door neighbor—coupled with a bond embodying the practical principle of "straw bail," is all that is need-

ed. If the case at bar is to be decided as urged by the defendant King, and is a fair exemplification of the workings of the law, it will be unnecessary and even imprudent for the party who desires to obtain a continuance in this novel way, to file a copy of the record in the federal court, for the chase of the adverse party, in his attempt to again impound his escaped cause, will be a more exciting and uncertain one. It does not seem that such results could have been contemplated by congress in framing this act.

In examining carefully the opinion of Judge Drummond referred to, it appears that a copy of the record had been filed in the United States circuit court. This is only disclosed incidentally, and no stress is laid upon that fact in the opinion. I can not follow the construction of the statute given, even by such an able jurist, further than to apply it to just such a case as he had before him. In this case the record is not yet filed in the federal court. The act authorizes that court to "proceed" when the record is filed. Until that time, indeed, it seems difficult to comprehend how that court can have jurisdiction. We unquestionably apply this rule to cases of change of venue, and do not consider the court to which the change of venue is taken as having jurisdiction until the record is received. If it be possible that the mere act of filing these two papers—known only to the clerk and attorney—deprives this court at once of its power to try the cause, I must still cling to the idea that until the record is filed in the federal court, there is as much power in this court to make an interlocutory order, providing for the preservation of the property, and for retaining it within the grasp of whichever tribunal the lot of trying the cause may fall to, as there is to remand a prisoner to custody after ordering a change of venue.

Is the cause one which can be removed? I have stated the nature of the action and the position which Mr. King, the defendant, who desires to remove it, occupies as a party. It seems that the controversy is really between the plaintiff and the bridge company. The defendant King is only brought into court for the purpose of enabling him to set up a lien on the property. If the plaintiff fails to recover a judgment against the bridge company, or even if it fails to subject the mortgage property to its alleged lien, King can obtain no affirmative relief. While upon the other enquiry, I have been embarrassed by the fact that Judge Drummond's opinion, in the case quoted, is so different from that at which I would have otherwise readily arrived, in this he sustains the view I am giving. In that case the plaintiff was a citizen of Massachusetts; the railroad company a citizen of Illinois. Certain judgment and other creditors were made defendants, one of whom filed a cross-bill—and the opinion proceeds to lay down the true rule for deciding whether the status of the parties is such as to make the cause removable, by declaring the true rule to be, to ascertain whether that court had jurisdiction of what may be regarded as the main controversy; and whether the other questions between citizens of the same state are mere incidents of such controversy. In that case the main controversy was between citizens of different states. In this it is between citizens of the same state. It is not at all probable that there will be any controversy in this action between the two courts. The defendant King, after filing in the federal court a copy of the record (or even without such filing, if he deems the transit complete without that step), can renew his motion in that court to vacate the order appointing the receiver. Upon that motion, or upon a motion to remand by the opposite party, that court can express its decisions upon the question of jurisdiction and removal, and I do not doubt that the views of a United States court upon the construction of a United States law, will be regarded as authoritative in the case in which they are enunciated. The motion to vacate the order must be overruled.